HARRIS, Judge,
dissenting.
I respectfully dissent.
Stephen Pate, while an inmate at Marion Correctional Institute (MCI), alleged in his complaint that he was attacked by three other inmates who Pate claims were members of a gang known as the “third world alliance.” He further claims that a corrections officer, Mirkhani, was present but refused to stop the beating and, as a result, Pate was injured to the extent that he had to be hospitalized. Pate sued Mirkhani and C. Paul Worthington, the superintendent of MCI, claiming they violated his civil rights.
Mirkhani and Worthington moved for summary judgment on the basis that the actions of the three inmates were unforeseeable and therefore they acted reasonably and, in any event, they were entitled to qualified immunity. Worthington raised the additional defense that he was not liable for the conduct of Mirkhani under the doctrine of respondeat superior. The trial court granted the summary judgment. I would reverse.
In Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court announced this doctrine:
[Government officials performing discretionary function[s] generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.
Pate has a constitutional right under the 8th and 14th Amendments to expect corrections officers to protect him from inmate beatings — particularly if the beatings take place in the presence of the officer. See Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556 (1st Cir.), cert. denied, 488 U.S. 823, 109 S.Ct. 68, 102 L.Ed.2d 45 (1988).
In considering a case involving the sheriffs responsibility for the misconduct of a deputy, our supreme court held:
We thus conclude that the intent behind the 1980 amendments [to section 768.28, Florida Statutes] was to extend the veil of sovereign immunity to the specific governmental employees when they are acting within the scope of employment, with the employing agency alone remaining liable up to the limits provided by statute. That veil is lifted only where the employee’s act fell outside the scope of employment, in which event sovereign immunity then shields the employing agency from liability. In any given situation either the agency can be held liable under Florida law, or the employee, but not both.
McGhee v. Volusia County, 679 So.2d 729, 733 (Fla.1996).
While this holding immunizes either. Mirk-hani or Worthington (depending on the facts as determined by the jury), the other remains exposed to liability. The McGhee court went on to say:
Under Swenson [v. Cahoon, 111 Fla. 788, 152 So. 203 (Fla.1933)], a jury question as to the sheriff or employing agency’s liability exists for acts of officers that can be described as abuses of lawful power. The employing agency is immune as a matter of law only if the acts are so extreme as to *791 constitute a clearly unlawful usurpation of authority the deputy does not rightfully possess ... or if there is not even a pretense of lawful right in the performance of the acts ... The fact that Hemlen may have intentionally abused his office does not in itself shield the sheriff from liability. In sum, the question must be put to the fact-finder whether Deputy Hernlen acted in bad faith, with malicious purpose, or in a manner exhibiting wanton or wilful disregard of human rights, safety, or property.
McGhee, 679 So.2d at 733.
Pate’s affidavit in this case reveals:
a. During 1992, numerous inmates, including Ralph Perez, Moses Calón, and Richard England, belonged to a prison gang at MCI named the “Third World Alliance.”
b. These inmates were well known to the correctional staff at MCI and were involved in numerous assaults, fights, and strong armed robberies at MCI during 1992.
c. Defendant Worthington, despite his supervisory responsibility, and his power to do so, took no action to halt the attacks upon inmates, including the Plaintiff. This is a ministerial duty required by statute.
d. Because of Defendant Worthington’s failure to transfer said inmates to a higher security institution, and by allowing them to be housed in the same dormitory (where they were better able to prey on inmates), Plaintiff was attacked by said inmates and received injuries requiring hospitalization.
e. Because of Defendant Worthington’s failure to see that his officer[s], under his supervision, were properly trained and familiar with all rules of the department and institution, Defendant Mirkhani failed to assist in stopping the attack upon Plaintiff. As a direct result of Defendant Mirkhani’s refusal to act, Plaintiff was injured requiring hospitalization.
f. Based upon Defendant Mirkhani’s supervising officer, Sergeant L.C. Smith, “Officer Mirkhani was on duty in “G” Dorm at the time [of the attack] but did nothing to assist in stopping the fight.” In fact, Defendant Mirkhani was counseled for “being too timid,” and was terminated from MCI on July 16,1992.
These sworn allegations raise a question as to whether Mirkhani, under the supervision of Worthington, was present and yet failed to protect an inmate under his control from a vicious beating and whether Mirkhani “acted in bad faith, with .malicious purpose, or in a manner exhibiting wanton or wilful disregard of human rights, safety, or property.” McGhee, swpra.
Although Mirkhani and Worthington submitted affidavits indicating that Pate had merely engaged in an unforeseeable fight which was properly handled by the guards, questions of fact remain and it was premature to enter a summary judgment in this action.